UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TOMMY EVANS,

     Petitioner,

v.                                 Case No. 8:20-cv-927-WFJ-SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## ORDER

     Tommy Evans, a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Respondent filed a response opposing the petition. (Doc. 12.) Mr. Evans did not file a reply. Upon consideration, the petition is **DENIED**.

## I.    Procedural History

     A state-court jury convicted Mr. Evans of aggravated assault, fleeing or eluding a law enforcement officer, possession of cocaine, and driving while license suspended or revoked. (Doc. 12-2, Ex. 8.) At sentencing, the state trial court found that Mr. Evans qualified as a habitual felony offender and a prison releasee reoffender. (*Id.*, Ex. 9, pp. 12-13.) The trial court sentenced Mr. Evans to concurrent terms of ten years' imprisonment for aggravated assault, twenty-five years' imprisonment for fleeing or eluding, five years' imprisonment for possession of cocaine, and time served for

driving while license suspended or revoked. (*Id.*, Ex. 10.) The state appellate court *per curiam* affirmed the convictions and sentences. (*Id.*, Ex. 16.) Mr. Evans unsuccessfully sought postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Exs. 22, 23; Doc. 12-3, Exs. 27, 29, 30, 33, 34, 37.) He also filed several motions to correct illegal sentence, all of which were denied. (Doc. 12-3, Exs. 41, 42, 48, 50, 51, 55.) This federal habeas petition followed. (Doc. 1.)

## II.    Facts; Trial Testimony

On the afternoon of January 8, 2011, the Street Crimes Unit of the St. Petersburg Police Department was conducting surveillance on a "drug house" in Pinellas County, Florida. (Doc. 12-2, Ex. 5, pp. 149, 247-48.) Officer Willard Smith, a member of the surveillance team, observed Mr. Evans get into the driver's side of a tan Buick Riviera parked in front of the house. A Hispanic male entered the car through the passenger side. Officer Smith recognized Mr. Evans from having "dealt with him in the past"; he also recognized the Hispanic male. (*Id.*, p. 159.)

The car drove off with Mr. Evans behind the wheel. Officer Smith, who was on foot at the time, described what he had seen over the police radio. Another officer heard the description and began following the car in an undercover police vehicle. This officer saw the car roll through a stop sign and illegally park on a street. The passenger got out, and the car drove away. Shortly thereafter, the officer in the undercover vehicle saw the car run through another stop sign. He relayed this information over the radio and asked uniformed officers to stop the vehicle.

An officer who heard the request attempted to stop the Buick Riviera by activating his lights and siren. The car did not stop, and a pursuit ensued. After the car drove through an alley and several yards, the officer ended the pursuit based on "the police department's policy" against pursuing vehicles for traffic violations. (*Id.*, p. 217.)

Meanwhile, Officer Willie Singletary had parked his "low-profile police cruiser" on the westbound lane of a two-lane street. (*Id.*, pp. 249-50.) He believed this location would allow him to "lend a hand" if the driver of the Buick Riviera fled on foot. (*Id.*, p. 250.) As he was sitting in his cruiser, Officer Singletary observed the Buick Riviera turn onto the eastbound lane of the street. As the car approached, the driver accelerated and "cross[ed] over into the westbound lane." (*Id.*, pp. 252-53.) Officer Singletary "kicked into survival mode," "stepped on the gas as hard [as he] could," and avoided the oncoming car by driving onto the front yard of a house. (*Id.*, pp. 253-55.) The Buick Riviera did not strike the police cruiser, but it "almost hit . . . the left rear panel" of the car. (*Id.*, pp. 254-55.) Officer Singletary testified that the encounter put him in "fear of [his] life." (*Id.*, p. 280.)

After this near-miss, Officer Singletary resumed the pursuit. During the ensuing chase, the Buick Riviera ran through multiple stop signs in a "residential area." (*Id.*, pp. 259, 299-300.) At one point, the car entered an alley and ran over a "children's bicycle." (*Id.*, pp 300-01.) Eventually, the driver exited the vehicle and ran "between some houses." (*Id.*, p. 261.) One officer saw a person matching the driver's description enter the back door of a single-family residence. Law enforcement approached the house and received permission from a resident to search the premises. The officers

3

found Mr. Evans inside, "sweaty and nervous." (*Id.*, pp. 191-92.) As the officers were leading Mr. Evans out, one of the residents looked at him and said, "Who the f*ck is that? Why is he in my house?" (*Id.*, p. 194.)

As Mr. Evans was sitting in the back of a police cruiser, several officers were outside discussing the children's bicycle. Mr. Evans overheard the discussion and said, "I didn't run over any bicycle." (*Id.*, pp. 304-05.) Meanwhile, Officer Singletary searched the Buick Riviera. He found a "piece" of crack cocaine on the front seat of the car. (*Id.*, p. 264.) The front seat was "one long bench seat," and the crack was "right in the middle" of it. (*Id.*)

Officer Smith—the member of the surveillance team who saw Mr. Evans enter the Buick Riviera at the "drug house"—eventually made his way to the police station. There, he saw Mr. Evans in custody and "identified that [he] was the same person [he] had watched get in the vehicle and drive off." (*Id.*, pp. 155-56.) Subsequent analysis revealed that Mr. Evans's fingerprints were on the driver-side door handle of the Buick Riviera.

## III.   Standards of Review

### A.   AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides

that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was

5

an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Mr. Evans's convictions and sentences without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

### B.     Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d

1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

### C.    Ineffective Assistance of Counsel

Mr. Evans alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Mr. Evans must show that counsel's alleged error prejudiced the defense, because "[a]n error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Mr. Evans must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

## IV.   Discussion

### A.   Ground One

Mr. Evans contends that the trial court's denial of his motion for judgment of acquittal violated his Sixth and Fourteenth Amendment rights because the evidence was insufficient to support his convictions. Specifically, Mr. Evans argues that the State failed to prove beyond a reasonable doubt that (1) he was the driver of the Buick Riviera; (2) he "intentionally threatened to do violence to [Officer] Singletary, as required for an aggravated assault conviction"; and (3) he was in "constructive possession of the cocaine found within the vehicle." (Doc. 1, pp. 9-11 (emphasis omitted).)

Respondent correctly contends that Mr. Evans failed to exhaust this claim. Proper exhaustion requires a petitioner to "make the state court aware that the claims asserted present federal constitutional issues." *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim

'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). A petitioner must do more, however, than "scatter some makeshift needles in the haystack of the state court record." *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005). Moreover, a petitioner "does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief" to find the "federal claim." *Baldwin*, 541 U.S. at 32.

Mr. Evans failed to squarely present his federal constitutional claim on direct appeal. In his initial brief, Mr. Evans argued that the trial court "erred in denying [his] motion for judgment of acquittal" because his "identity was not established" and "the evidence was insufficient to put forth a prima facie case for aggravated assault as well as possession of cocaine." (Doc. 12-2, Ex. 13, p. 14.) But Mr. Evans did not cite the United States Constitution or any other source of federal law. Nor did he "label[] the claim 'federal.'" *Baldwin*, 541 U.S. at 32. Instead, Mr. Evans relied entirely on Florida caselaw to support his argument that the evidence was insufficient to support his convictions. Because Mr. Evans "did not raise any federal claims or cite to any federal cases in state court when presenting his argument on the sufficiency of the evidence," he "failed to fairly present his federal sufficiency-of-the-evidence claim to the Florida state courts and thus did not exhaust his state court remedies as to that claim." *Cascante v. Florida*, 816 F. App'x 429, 431 (11th Cir. 2020); *see also Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 459 (11th Cir. 2015) (holding that federal sufficiency-of-the-evidence claim was not exhausted because petitioner "asserted in his [state appellate] brief that his conviction rested on insufficient evidence, without clarifying whether he intended to bring a federal or a state sufficiency of the evidence claim").

Mr. Evans cannot return to state court to present his unexhausted claim in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within thirty days of the rendition of a sentence). As a result, Ground One is procedurally defaulted. *See Smith*, 256 F.3d at 1138 ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). And because Mr. Evans has not shown that an exception applies to overcome the default, Ground One is barred from federal habeas review.

Even if Mr. Evans had exhausted this claim, he would not be entitled to relief. Under the Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), a court reviewing a challenge to the sufficiency of the evidence must evaluate whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Under *Jackson*, the prosecution does not have "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." *Id.* at 326. If the record contains facts supporting conflicting inferences, the jury is presumed to have "resolved any such conflicts in favor of the prosecution." *Id.*

Consistent with AEDPA, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal

court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

Mr. Evans fails to show that the state court's rejection of his sufficiency challenge was "objectively unreasonable." *Id.* First, Mr. Evans contends that the prosecution failed to establish his identity as the driver of the Buick Riviera. This argument lacks merit. Officer Smith testified at trial that he saw Mr. Evans get into driver's side of the Buick Riviera. He recognized Mr. Evans because he had "dealt with him in the past." (Doc. 12-2, Ex. 5, p. 159.) After Mr. Evans was apprehended, Officer Smith saw him at the police station and "identified that [he] was the same person [he] had watched get in the vehicle and drive off." (*Id.*, pp. 155-56.) Moreover, as the pursuit drew to a close, an officer saw a person matching Mr. Evans's description enter the back door of a house. When officers found Mr. Evans inside, he was "sweaty and nervous." (*Id.*, pp. 191-92.) As the officers were leading Mr. Evans out, one of the residents looked at him and said, "Who the f*ck is that? Why is he in my house?" (*Id.*, p. 194.) Furthermore, Mr. Evans's fingerprints were found on the driver-side door handle of the Buick Riviera. Viewed in the light most favorable to the prosecution, the evidence at trial was sufficient to allow a "rational trier of fact" to find that Mr. Evans was the driver. *Jackson*, 443 U.S. at 319.

Second, Mr. Evans contends that the evidence was insufficient to establish the intent element of his aggravated assault conviction. Again, Mr. Evans is mistaken. "An aggravated assault is an 'assault' with a deadly weapon without intent to kill or

with an intent to commit a felony." *Negron v. State*, 938 So. 2d 650, 651 (Fla. 4th DCA 2006) (quoting Fla. Stat. § 784.021(1)). An "assault" is "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." Fla. Stat. § 784.011(1). "[T]o satisfy the intent element [of aggravated assault,] the State must prove that the defendant did an act that was substantially certain to put the victim in fear of imminent violence, not that the defendant had the intent to do violence to the victim." *Pinkney v. State*, 74 So. 3d 572, 576 (Fla. 2d DCA 2011).

Here, the prosecution presented sufficient evidence of intent. Officer Singletary testified that, during the pursuit, he parked his "low-profile police cruiser" on the westbound lane of a two-lane street. (Doc. 12-2, Ex. 5, pp. 249-50.) As he was sitting in his cruiser, Officer Singletary observed the Buick Riviera turn onto the eastbound lane of the street. As the car approached, Mr. Evans accelerated and "cross[ed] over into the westbound lane." (*Id.*, pp. 252-53.) Officer Singletary "kicked into survival mode," "stepped on the gas as hard [as he] could," and evaded the oncoming car by driving onto the front yard of a house. (*Id.*, pp. 253-55.) During the encounter, Officer Singletary was in "fear of [his] life." (*Id.*, p. 280.) Based on this testimony, a rational trier of fact could conclude that by accelerating toward Officer Singletary's parked car, Mr. Evans "did an act that was substantially certain to put [Officer Singletary] in fear of imminent violence." *Pinkney*, 74 So. 3d at 576.

Third, Mr. Evans argues that the "evidence was insufficient to show constructive possession of the cocaine found within the vehicle." (Doc. 1, p. 11.) This argument fails as well. "Possession of cocaine may be either actual or constructive." *Williams v. State*, 154 So. 3d 426, 428 (Fla. 4th DCA 2014). "Actual possession exists where a defendant has physical possession of contraband. Constructive possession exists where a defendant does not have actual physical possession of contraband but knows of its presence on or about his premises and has the ability to exercise dominion and control over it." *Id.* (citation omitted).

The evidence was sufficient to establish that Mr. Evans constructively possessed the crack cocaine. A rational trier of fact could conclude that Mr. Evans knew of the crack's presence in the Buick Riviera. "Although an inference that a defendant knew of the presence of contraband does not arise from the defendant's [m]ere proximity to [the] contraband, the location of contraband in plain view of the defendant is sufficient to establish the knowledge element of constructive possession." *Jiles v. State*, 984 So. 2d 622, 623 (Fla. 2d DCA 2008) (internal quotation marks and citation omitted). Here, Officer Singletary testified that he found the crack "right in the middle" of the car's "front bench seat." (Doc. 12-2, Ex. 5, p. 264.) "[T]he plainly visible presence of the [crack on the front seat] was sufficient to establish that [Mr. Evans] knew of the presence of the" contraband. *Jiles*, 984 So. 2d at 623.

The prosecution also presented sufficient evidence of Mr. Evans's "ability to exercise dominion and control over" the crack. *Williams*, 154 So. 3d at 428. "When a person is in exclusive control of the vehicle or the premises in question," "dominion

and control can be inferred." *Melton v. State*, 317 So. 3d 292, 298 (Fla. 2d DCA 2021). In this case, Mr. Evans was the sole occupant and driver of the Buick Riviera when he exited the car and fled on foot.[1] "As the sole occupant and driver of the vehicle, [Mr. Evans] had exclusive possession of the vehicle[,] creating an inference of his dominion and control over the contraband contained therein." *State v. Odom*, 862 So. 2d 56, 59 (Fla. 2d DCA 2003).

Accordingly, even if Mr. Evans had exhausted his sufficiency challenge, it would fail on the merits because the state court's rejection of his arguments was not "objectively unreasonable." *Cavazos*, 565 U.S. at 2.

## B.    Ground Two

Mr. Evans argues that his sentences violated the Eighth Amendment because they were "excessive" and "disproportionate to the crime committed." (Doc. 1, p. 13.) He also contends that, in crafting the sentences, the trial court impermissibly considered (1) a fleeing-to-elude offense of which he had been acquitted, and (2) an unsubstantiated kidnapping allegation. According to Mr. Evans, the trial court's consideration of these matters violated his rights under the Eighth and Fourteenth Amendments.

Mr. Evans raised these arguments on direct appeal, and the state appellate court affirmed his convictions and sentences without opinion. Where, as here, "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden

---

[1] As noted above, Mr. Evans dropped off the passenger before police attempted to stop him.

still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. In this situation, "a habeas court must determine what arguments or theories . . . could have supported[] the state court's decision." *Id.* at 102.

Mr. Evans has not met his burden of "showing there was no reasonable basis for the state court to" reject his proportionality challenge. *Id.* at 98. "The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996-97 (1991)). "'[F]ederal courts should be reluctant to review legislatively mandated terms of imprisonment, and [] successful challenges to the proportionality of particular sentences should be exceedingly rare.'" *Id.* at 22 (quoting *Hutto v. Davis*, 454 U.S. 370, 374 (1982)). "[A] reviewing court must make a threshold determination that the sentence imposed is grossly disproportionate to the offense committed and, if it is grossly disproportionate, the court must then consider the sentences imposed on others convicted in the same jurisdiction and the sentences imposed for commission of the same crime in other jurisdictions." *United States v. Moriarty*, 429 F.3d 1012, 1024 (11th Cir. 2005) (quoting *United States v. Raad*, 406 F.3d 1322, 1323 (11th Cir. 2005)). "In general, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *Id.* (quoting *United States v. Delacruz-Soto*, 414 F.3d 1158, 1168 (10th Cir. 2005)).

As noted above, the trial court found that Mr. Evans qualified as a habitual felony offender and a prison releasee reoffender. (Doc. 12-2, Ex. 9, pp. 12-13.) As a

result, he was subject to a statutory maximum term of imprisonment of fifty-five years. (*Id.*, p. 4; *see also* Fla. Stat. §§ 775.084, 893.13.) The court ultimately sentenced Mr. Evans to concurrent terms of ten years' imprisonment for aggravated assault, twenty-five years' imprisonment for fleeing or eluding a law enforcement officer, five years' imprisonment for possession of cocaine, and time served for driving while license suspended or revoked. (Doc. 12-2, Ex. 10.) Accordingly, Mr. Evans's sentences fell "within the limits imposed by statute," which weighs against finding that they violated the Eighth Amendment. *United States v. Flores*, 572 F.3d 1254, 1268 (11th Cir. 2009).

Moreover, the state court could reasonably have concluded that the sentences imposed were not "grossly disproportionate to the offense[s] committed." *Moriarty*, 429 F.3d at 1024. Mr. Evans led police on a car chase in a residential area of St. Petersburg. He drove recklessly, ignoring multiple stop signs, driving through several yards in a residential area, and running over a children's bicycle in an alley. Furthermore, Mr. Evans unsuccessfully attempted to ram his car into a parked police cruiser. The officer sitting in the cruiser testified that Mr. Evans's conduct put him in "fear of [his] life." (Doc. 12-2, Ex. 5, p. 280.) In light of the evidence presented at trial, Mr. Evans cannot show that "there was no reasonable basis for the state court to" reject his proportionality challenge. *Richter*, 562 U.S. at 98. Nor has Mr. Evans "identified any clearly established federal law that compels the conclusion that his sentence[s], which [were] within the limits set out under Florida law, [were] so grossly disproportionate to the offense[s] as to violate the Eighth Amendment." *Mack v. Sec'y,*

*Dep't of Corr.*, No. 8:20-cv-1507-VMC-AAS, 2020 WL 6946439, at *5 (M.D. Fla. Nov. 25, 2020).

Mr. Evans separately contends that the trial court violated his federal constitutional rights during sentencing by considering (1) a fleeing-to-elude offense of which he had been acquitted, and (2) an unsubstantiated kidnapping allegation. It is well established that "sentences based on erroneous and material information or assumptions violate due process." *United States v. Sjeklocha*, 114 F.3d 1085, 1087 (11th Cir. 1997); *see also Roberts v. United States*, 445 U.S. 552, 556 (1980) ("We have . . . sustained due process objections to sentences imposed on the basis of misinformation of constitutional magnitude."). The Supreme Court has held that due process is "generally satisfie[d]" when "facts relevant to sentencing [are] proved by a preponderance of the evidence." *United States v. Watts*, 519 U.S. 148, 156 (1997).

Mr. Evans's argument fails because a "fairminded jurist" could conclude that the trial court did *not* consider the fleeing-to-elude offense or the kidnapping allegation when imposing sentence. *Richter*, 562 U.S. at 101. At sentencing, defense counsel pointed out that Mr. Evans had had "issues with the Street Crimes Unit" in the past. (Doc. 12-2, Ex. 9, p. 9.) She explained that Mr. Evans went "to trial on a previous fleeing case, similar, and he was found not guilty in that case." (*Id.*) In response, the court stated:

> I guess the conclusion to be drawn is, is that because he thinks he's had prior difficulties with them, his response whenever he is lawfully stopped is to run and endanger his life, the cops' life, and anybody's life who happens to get in the way under those circumstances. I mean I can't really

draw any different conclusion. I mean every time they try and stop him lawfully, he runs.

The last time he ran and then he got found not guilty. He figured the same was happening this time; almost did happen because you did a good job of representing him, and a jury almost found him not guilty, but they didn't. And unfortunately, I've got to believe the next time he's out on the street and selling dope, which his history suggests he's going to be doing, and the cops try and arrest him or stop him when he's selling dope and he has no license, the same thing's going to happen.

And one of these times if it keeps happening, somebody's going to get killed as a part of this. I don't know how I can come to a different conclusion than that.

(*Id.*, p. 10.)

Defense counsel responded that she was "not [Mr. Evans's] attorney in the last trial," but her "understanding [was] it was not him." (*Id.*) The court indicated that it had "heard this trial and [ ] didn't have any doubt about whether this was him or not." (*Id.*, p. 11.) The court then stated:

I hear a lot of cases and I hear a lot of ID defenses. I didn't hear one in this case that made me significantly doubt whether that was Mr. Evans out there on that particular date or not, so that to me is not the issue, I don't think. Maybe the other case, it really wasn't him.

But, you know, here's the problem; he's got a history of selling dope, right, on a couple of different occasions. Possession with intent, selling dope, and then a bunch of other things, and fighting with the cops and other drug charges, so I'm not sure what's happening that's going to be different if there is a next time.

(*Id.*, pp. 11-12.) Citing "this whole set of circumstances," the court imposed what it described as a "seriously significant prison sentence." (*Id.*, p. 13.)

A fairminded jurist could conclude that the court did not rely on the acquitted fleeing-and-eluding charge in imposing sentence. The court initially stated that "[t]he

last time [Mr. Evans] ran," he "got found not guilty." (*Id.*, p. 10.) But after defense counsel expressed her "understanding" that Mr. Evans was not the perpetrator in the earlier case, the court acknowledged that "[m]aybe [in] the other case, it really wasn't him." (*Id.*, p. 11.) The court then explained that the "problem" was that, because of Mr. Evans's "history of selling dope" and "fighting with the cops," it was "not sure" what would be "different" if the police attempted to stop him again. (*Id.*, pp. 11-12.) A reasonable interpretation of the transcript is that the court ultimately gave no weight to the acquitted conduct in imposing sentence.

Likewise, a fairminded jurist could conclude that the court did not rely on the kidnapping allegation during sentencing. The court noted at the beginning of the sentencing hearing that the kidnapping case was "still pending." (*Id.*, p. 3.) Later in the hearing, the court asked whether the mother of Mr. Evans's children was "the victim" of the kidnapping. (*Id.*, p. 8.) Both the prosecution and defense counsel stated that she was not. (*Id.*) Defense counsel clarified that "[t]he victim in the other case, [Mr. Evans] was with her, a girlfriend, long-term girlfriend." (*Id.*) Neither the lawyers nor the court referred to the kidnapping allegation again. Thus, there is no basis to conclude that the court considered the pending kidnapping charge when imposing sentence.

In sum, Mr. Evans has not met his burden of "showing there was no reasonable basis for the state court to" reject his sentencing-based challenges. *Richter*, 562 U.S. at 98. For that reason, Mr. Evans is not entitled to relief on Ground Two.

### C.     Ground Three

Finally, Mr. Evans contends that trial counsel rendered ineffective assistance by failing to call him to testify at trial. He claims that the "decision not to testify was made against his wishes." (Doc. 1, p. 16.) He also asserts that both his counsel and the trial court failed "to advise him of his fundamental right to testify at his own trial." (*Id.*) According to Mr. Evans, he would have testified that "he was not the driver," thus "pitting the prosecutor's position [against] his equally believable testimony." (*Id.*, p. 17.)

Mr. Evans acknowledges that he did not present this claim to the state postconviction court. Because he cannot return to state court to present the claim in an untimely, successive postconviction motion, *see* Fla. R. Crim. P. 3.850(b), (h), it is procedurally defaulted. *See Smith*, 256 F.3d at 1138.

Mr. Evans seeks to excuse the default under *Martinez v. Ryan*, 566 U.S. 1 (2012). *Martinez* held that a petitioner may establish cause for the default of a claim of ineffective assistance of trial counsel where (1) "in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective," and (2) the defaulted claim is a "substantial one," meaning that "the claim has some merit." *Martinez*, 566 U.S. at 14, 17. A petitioner shows that his defaulted claim is "substantial" under *Martinez* by demonstrating that "reasonable jurists 'would find it debatable whether the petition states a valid claim of the denial of a constitutional

right.'" *Clark v. Comm'r, Ala. Dep't of Corr.*, 988 F.3d 1326, 1331 (11th Cir. 2021) (quoting *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269-70 (11th Cir. 2014)).

*Martinez* does not excuse the default of Ground Three because the underlying ineffective-assistance claim is not "substantial." *Martinez*, 566 U.S. at 14. Indeed, the record refutes Mr. Evans's allegation that defense counsel and the trial court failed to advise him of his right to testify. After the prosecution rested, the court asked about Mr. Evans's prior felony convictions. The prosecution indicated that Mr. Evans had nine "impeachables." (Doc. 12-2, Ex. 5, p. 354.) The court explained that the number of prior convictions would enter "into [defense counsel's] equation about whether you want him to testify or not. You guys will have to talk about it. You think you can do that between now and 9:45 to make that decision?" (*Id.*, pp. 354-55.) Defense counsel responded that she would "meet with [Mr. Evans] this evening." (*Id.*, p. 355.)

> The next day, the court engaged in the following colloquy with Mr. Evans:
>
> THE COURT: All right. You can have a seat. Make yourself comfortable. When the jury comes back in, you're going to have the opportunity, if you choose, to testify in the case. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You've talked to [defense counsel] about whether that's a good idea or not, right?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: She's given you her advice in that regard?
>
> THE DEFENDANT: Yes, sir.

THE COURT: All right. You're free to accept or reject that advice. Even if she tells you don't do it, you still can if you think it's a good idea. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Have you had enough time to talk to her about that?

THE DEFENDANT: Yes, sir.

THE COURT: And have you made a decision?

THE DEFENDANT: Yes, sir.

THE COURT: What is that decision?

THE DEFENDANT: To not do so.

THE COURT: You choose not to testify?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Has anyone threatened or forced you to do that?

THE DEFENDANT: No, sir.

THE COURT: Did anyone promise you anything in order to get you to do that?

THE DEFENDANT: No, sir.

THE COURT: You're doing that freely and voluntarily because you feel it's in your best interest?

THE DEFENDANT: Yes, sir.

THE COURT: All right. Then we'll find that he's had sufficient time to talk to counsel and he's made the free and volitional decision to choose not to testify.

(*Id.*, pp. 373-75.)

Mr. Evans's "sworn trial testimony undermines his current claim that he wanted to testify in his own defense." *Parris v. Mitchem*, No. 4:09-cv-1473-JFG-RRA, 2012 WL 4479156, at *7 (N.D. Ala. Sept. 25, 2012), *aff'd sub nom. Parris v. Warden, Limestone Corr. Facility*, 542 F. App'x 850 (11th Cir. 2013); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). Because the record reflects that Mr. Evans made an informed decision not to testify after consulting with his attorney, he has failed to establish that counsel's performance was deficient. *See McKennie v. Sec'y, Dep't of Corr.*, No. 8:09-cv-1527-SDM-EAJ, 2012 WL 2402806, at *6 (M.D. Fla. June 26, 2012) ("The trial judge's finding that [petitioner's] decision not to testify was free and voluntary constitutes a formidable barrier in subsequent collateral proceedings."); *Porter v. Singletary*, 883 F. Supp. 660, 665-66 (M.D. Fla. 1995) (rejecting ineffective-assistance claim based on attorney's alleged "fail[ure] to allow [petitioner] to testify in his own behalf" because trial transcript showed that petitioner "agreed not to testify" after consultation with attorney).

Thus, because Mr. Evans's ineffective-assistance claim is not substantial, *Martinez* does not excuse the procedural default, and Ground Three is barred from federal habeas review.[2]

---

[2] Mr. Evans appears to seek an evidentiary hearing on his claims. The Court concludes that an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (stating that "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing"); *Landers v. Warden*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law

Accordingly, the Court **ORDERS**:

1. Mr. Evans's petition (Doc. 1) is **DENIED**.

2. The **CLERK** shall enter judgment accordingly and is directed to **CLOSE** this case.

3. Mr. Evans is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Evans must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Evans has not made the requisite showing. Because Mr. Evans is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on March 30, 2023.

_____
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

---

error or an unreasonable determination of fact on the part of the state court, based solely on the state court record.").